UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COURTNEY LONG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:21-cv-01806-TAB-SEB |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Courtney Long filed a petition for a writ of habeas corpus challenging a New Castle Correctional Facility disciplinary proceeding identified as NCN 20-12-0020. For the reasons explained in this order, Long's habeas petition is denied, and the Clerk is directed to enter final judgment in Respondent's favor.

**I.      Background**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance written notice of the charge; (2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and (4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

On December 21, 2020, Officer Christopher Sanford issued a conduct report charging Long with a violation of Code A-111/113.  [Filing No. 9-1.]  The conduct report states:

On 12/21/2020 I, Christopher Sanford did finish reviewing phone calls made by offender Courtney Long #108201. Based on conversations between 11/18/2020 and 12/17/20, it was found that offender Long did attempt to traffic fictitious legal mail on or around 12/8/2020. On 11/24/2020 1436hrs Chapman #221909 call to 317-408-2521 (Latoya Berry): Offender Long #108201 Pin Sharing

> Offender: Did you get them? He gave you the information to the attorney, right?
> Callee: I guess I don't know what that was.
> Offender: All you gotta do is write his name on the lil bullshit envelope and shoot em to the attorney. That's all you do, put a stamp on it put them in the envelope and shoot them to the attorney. That's it.
> Callee: Alright.
> Offender: The attorney is going to shoot em to us.
> Callee: Alright.
> Offender: (Speaking to another offender) She got you bro.

11/24/2020 1733hrs Murray #261112 call to 219-614-6140 (Dominique Frison): Offender Crews #172739 Pin Sharing:

> Offender: My ni**a text back?
> Callee: Nuh uh.
> Offender: Call ol girl for me she off work right now so I can get this one situation together.

(3-way with Latoya Berry)

> Offender: I just want to make sure that you have that straight?
> Callee2: Yea what am I supposed to be doing? Am I supposed to send it to the Alexander?
> Offender: Yea. From me though.
> Callee2: From the other name.
> Offender: Yea.
> Callee2: I just wanted to make sure.

I did confirm the facility did receive an envelope addressed to offender Victor Crews 172739 from Hurst Limontes LLC. Hurst Limontes LLC was contacted and confirmed they only forwarded on the envelope that was sent to them without opening it. The original envelope was addressed to Hurst Limontes LLC from Victor Crews at New Castle Correctional Facility. They placed the envelope into

> a larger envelope and sent it to Victor Crews #172739 at New Castle Correctional Facility. Confirmation from NCCF was obtained confirming the original envelope was not sent from NCCF. These findings confirm Courtney Long attempted to traffic Fictitious legal mail into NCCF.
>
> Through my training and experience as a Correctional Police Officer and Investigator, I determined the legal mail did not originate at the correctional facility or attorney's office. Through my training and experience I know this type of cotton paper to be used for trafficking intoxicating substances. The items contained in the envelope were consistent with my experience. Inmates use this paper to smoke
> and get high.

[Filing No. 9-1.][1] In the conduct report, Sanford noted the physical evidence included state police laboratory information, photographs, call log, and two recorded phone calls. [Filing No. 9-1.] Four photographs documenting the envelopes received were attached. [Filing No. 9-2.]

On December 23, 2020, Officer Thompson produced a Report of Disciplinary Hearing Video Evidence Review. [Filing No. 9-10.] The report noted that Thompson reviewed the recorded phone calls described in the conduct report. [Filing No. 9-10.] On December 28, 2020, Long was notified of the charges and pleaded not guilty. [Filing No. 9-4.] He requested (1) a lay advocate, [Filing No. 9-4]; (2) the ability to call Sanford and Supervisor Sammy Joseph, [Filing No. 9-6]; and (3) the laboratory results, [Filing No. 9-6.]

A hearing was held on February 3, 2021. [Filing No. 9-9.] Long pleaded not guilty, indicated that he was not trafficking, and that he never had any of the documents that are the subject of the charges. [Filing No. 9-9.] The evidence presented at the hearing included staff reports, Long's statement, evidence from witnesses, emails, pictures, recorded phone records, and queue file list. [Filing No. 9-9.] Based on this evidence, Hearing Officer Thompson found Long

---

[1] The Court reviewed the phone records in this matter. [Filing No. 11.] Sandford's conduct report accurately summarizes the phone recordings with irrelevant statements omitted. *Compare* [Filing No. 9-1] *with* [Filing No. 11].

3

guilty of violating Code A-111/113. [Filing No. 9-9.] The sanctions imposed included a loss of 45 commissary days, deprivation of 90 days of earned credit time, and a one-level demotion in credit class—the latter being suspended. [Filing No. 9-9.] On February 8, 2021, Long filed an appeal. [Filing No. 9-16.] On February 18, 2021, the facility denied the appeal. [Filing No. 9-16.] On June 17, 2021, after the denial of his appeals to the Indiana Department of Correction, Long filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.]

## II. Discussion

Long's petition raises three grounds for relief. Specifically, he alleges he was denied the right to call witnesses, the right to access exculpatory evidence, and the right to have a hearing before an impartial decisionmaker.

### A. Right to Call Witnesses

Long alleges that he was denied due process because he was not permitted an opportunity to solicit statements from and cross-examine Officer Sanford and Supervisor Sammy Joseph. [Filing No. 1.] He maintains his disciplinary hearing was transformed into an interrogation of him because before speaking with the officers regarding their written statements a camera was produced, and he was Mirandized.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566). Long does not dispute that Sandford and Joseph appeared at his hearing nor does he deny they provided written statements. [Filing No. 1; Filing No. 9-14.] In fact, the record demonstrates that both appeared, and Long indicated he did not want to speak with them. [Filing No. 9-11.] Long complains that he was informed prior to the hearing that any statement he made could be used against him, and because

4

of the warning, he did not question the witnesses at the hearing, which prevented him from preparing a defense. The Fifth Amendment's guarantee against compelled self-incrimination does not apply to the administrative misconduct with which Long was charged. *Henson v. Knight*, No. 1:06-cv-1194-SEB-VSS, 2006 WL 3513903, at *2 (S.D. Ind. Dec. 4, 2006) (citing *Kitchen v. O'Leary*, 1985 WL 2219 (N.D.Ill.1985) (discussing the inapplicability of Miranda in the context of prison disciplinary proceedings, as decided by *Baxter v. Palmigiano*, 425 U.S. 308 (1976))); *see also Caruth v. Pinkney*, 683 F.2d 1044, 1052 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983) ("Prison disciplinary proceedings . . . have never been considered part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). The information supplied to him, however, was entirely accurate. *Henson*, 2006 WL 3513903, at *2. Thus, the Miranda-type warning given to Long put him in a position to make a fully informed choice. *Id.* It did not provide Long with an easy choice. While it may not have been an easy choice, due process does not guarantee an easy choice. *Id.* What matters here is that the choice Long faced did not deprive him of due process.

     **B.**     **Access to Exculpatory Evidence**

Long next alleges that he was denied due process because he was not provided with a copy of the laboratory results, which he asserts would have proven he did not traffic in an intoxicating substance. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (cleaned up). In the prison disciplinary context, "the purpose of [this] rule is to ensure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (cleaned up). Evidence is exculpatory if it undermines or contradicts the finding of guilt, and it is material if

5

disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

In this case, Long was not charged with trafficking an intoxicating substance. [Filing No. 9-1.] Long was charged with offenses A-111 and A-113. Code A-111 defines Conspiracy/Attempting/Aiding or Abetting as, "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." [Filing No. 9-21.] Code A-113 defines trafficking as, "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." [Filing No. 9-21.] As a result, whether an illegal substance was present is irrelevant to Long's charges. He admitted to improper PIN sharing [Filing No. 1], and to having envelopes not associated to him or his case sent to the correctional facility [Filing No. 9-2; Filing No. 11]. These envelopes qualify as the "unauthorized physical objects," [Filing No. 9-21], that support the hearing officer's guilty determination [Filing No. 9-9].

    **C.**    **Impartial Decisionmaker/Sufficiency of the Evidence**

Finally, Long challenges the impartiality of his hearing officer because he alleges the hearing officer made a decision that went against the weight of the evidence. [Filing No. 1.] A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*,

355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  Indeed, the constitutional standard for impermissible bias is high.  *Piggie*, 342 F.3d at 666.  Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.  In this case, the hearing officer, T. Thompson, did not participate in the investigative stage of the alleged offenses.  [Filing No. 1-1; Filing No. 9-1.]  Sanford was the primary author, with a co-signature by his supervisor, Sammy Joseph.  [Filing No. 9-1.]

       Challenges to the sufficiency of the evidence are governed by the "some evidence" standard.  "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274.  *See also Eichwedel v. Chandler*, 696 F.3d 600, 675 (7th Cir. 2012) ("The some evidence standard is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (cleaned up).  The "some evidence standard" is much more lenient than the beyond a reasonable doubt standard.  *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).  As noted above, the record contains some evidence Long committed the offense outline in the conduct report.  [Filing No. 1; Filing No. 9-1; Filing No. 9-2; Filing No. 9-21; and Filing No. 11.]  Additionally, the hearing officer produced evidence that he reviewed the phone recordings before making his final decision.  [Filing No. 9-10.]

**III.    Conclusion**

       "The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Long to the relief he seeks.

7

Accordingly, Long's petition for a writ of habeas corpus is denied. This action is dismissed with prejudice. [Filing No. 1.]

Date: 4/19/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

COURTNEY LONG
108201
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov